IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

NORMA JEAN DENNIS, *individually and as the surviving spouse and next of kin of William Jerry Dennis, deceased*

    Plaintiff,

v.

RACETRAC PETROLEUM, INC., *et. al.*

    Defendant,

NO. 3:11-0349
JUDGE HAYNES

## MEMORANDUM

Plaintiff, Norma Jean Dennis, a Tennessee citizen, filed this action originally in the Circuit Court for Davidson County, Tennessee on March 3, 2010 against Defendants RaceTrac Petroleum, Inc. ("RaceTrac"), a Georgia corporation with its principal place of business in Georgia; Florida Rock & Tank Lines, Inc. ("Florida Rock"), a Florida corporation with its principal place of business in Florida; and Dover Fluid Management, Inc. ("Dover Fluid"), a Delaware corporation with its principal place of business in Michigan and doing business as Blackamer Company. (Docket Entry No. 1, Attachment 1). Defendants removed the action under the diversity jurisdiction statute, 28 U.S.C. §§ 1332. (Docket Entry Nos. 1 and 3).

Plaintiff's claims arise from the alleged wrongful death of her husband who died of severe burns from an explosion in a tank-to-tank fuel transfer at Defendant RaceTrac's RaceWay gas station on March 9, 2010. Plaintiff's specific claims are:

1. Defendant RaceTrac negligently and recklessly failed to advise the decedent that his receiving tank was full; failed to have in place sufficient guidelines and procedures for tank-to-tank transfer emergencies; failed to inform

decedent that he could no longer perform his job safely; and is strictly liable for the ultrahazardous activity of tank-to-tank fuel transfers.[1]

2. Defendant Florida Rock negligently and recklessly failed to properly install and maintain the transfer pump to ensure it would cease pumping fuel when the ball valve safety system activated; failed to install and maintain the discharge pipe to withstand the increased pressure from the ball valve safety system's activation; and failed to install the emergency shutoff switch so that it was immediately accessible in an emergency.

3. Defendant Dover Fluid negligently and recklessly designed and manufactured the transfer pump and discharge pipe to continue to pump fuel, despite the ball valve safety system's activation; and designed, manufactured, and sold the transfer pump and discharge pipe in a defective condition that was unreasonably dangerous.

Id. at 7-11.[2] Plaintiff seeks compensatory and punitive damages, pre- and post-judgment interest, and costs arising from this suit.

In the Initial Case Management Order, the parties agreed to limited and expedited discovery on jurisdictional issues. (Docket Entry Nos. 25 and 26). On June 1, 2010, Plaintiff discovered that EDA-T, Inc., a Tennessee corporation, was the third-party contract operator of the RaceWay station when the incident occurred. (Docket Entry No. 28 at 4).

Before the Court are Plaintiff's motion to remand and motion to amend pursuant to Fed. R. Civ. P. 15(a), (Docket Entry No. 27), and Defendants RaceTrack and Florida Rock's motions to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). (Docket Entry Nos. 9 and 11).

---

[1] Plaintiff also alleges claims against OWC, Ltd., who changed its name to RaceTrac Petroleum, Inc., on or about 1979. (Docket Entry No. 1 at 1).

[2] Plaintiff alleges alternative products liability claims against unknown corporations A, B, C, D, and E. (Docket Entry No. 1, Attachment 1 at 11-13).

2

In her motion to amend and remand, Plaintiff seeks to add EDA-T as a defendant in this action. (Docket Entry No. 28 at 1). It is undisputed that, if permitted to amend, EDA-T's addition would defeat complete diversity, and this Court would lack subject matter jurisdiction. Id. Defendant RaceTrac contests the motion to amend on grounds of futility for lack of timeliness and for failure to state a claim under Fed. R. Civ. P 12(b)(6). (Docket Entry No. 30 at 1).

In its motion to dismiss for failure to state a claim, Defendant Florida Rock contends that Plaintiff's exclusive remedy is workers' compensation, under Tenn. Code Ann. § 50-6-108, and as Plaintiff's actual employer on March 9, 2010, Florida Rock cannot be held liable under Tennessee law. (Docket Entry No. 10). Plaintiff filed a notice of voluntary dismissal of Florida Rock from the action. (Docket Entry No. 16). Therefore, Florida Rock's motion to dismiss should be denied as moot. (Docket Entry No. 9).

Defendant RaceTrac also contends that Plaintiff's exclusive remedy is Tennessee's workers' compensation because RaceTrac was Plaintiff's statutory employer, defined by Tenn. Code Ann. § 50-6-113, (Docket Entry No. 12 at 3-4), but Plaintiff contests RaceTrac's designation as a statutory employer. (Docket Entry No. 15).

### A. Plaintiff's Motion to Amend Complaint

Plaintiff seeks to amend her complaint to add EDA-T as a defendant, (Docket Entry No. 27), because on March 9, 2010 EDA-T was the third-party contract operator of the RaceWay gas station where the incident occurred and was the employer of the individuals working there on that date. (Docket Entry No. 28 at 7). Defendant RaceTrac contends that EDA-T did not owe a legal duty to Plaintiff because RaceTrac retained title and control of the fuel on site. Defendant also argues that Plaintiff's addition of EDA-T violates Tennessee's one-year statute of

3

limitations for personal injury actions, Tenn. Code Ann. § 28-3-104(1). (Docket Entry No. 30 at 5-6.)

"The Court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The decision as to "when justice so requires" is within the discretion of the Court. Martin v. Assoc. Truck Lines, Inc., 801 F.2d 246, 248 (6th Cir. 1986). Yet, to exercise its jurisdiction, there must be complete diversity of the parties, which "attaches only when all parties on one side of the litigation are of a different citizenship from all parties on the other side of the litigation." Coyne v. American Tobacco Co., 183 F.3d 488, 492 (6th Cir. 1999) (quoting SHR Ltd. P'ship. v. Braun, 888 F.2d 455, 456 (6th Cir. 1989)). The addition of EDA-T, a Tennessee corporation, would defeat complete diversity.

When an amendment would defeat complete diversity after removal, courts "may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e). In applying § 1447(e), in exercising its discretion, the Court must "determine if allowing joinder would be fair and equitable." Christian v. Works, No. 3:09-CV-141, 2010 WL 1427299, at *2 (E.D. Tenn. Apr. 7, 2010) (quoting City of Cleveland v. Deutsche Bank Trust Co., 571 F. Supp. 2d 807, 823 (N.D. Ohio 2008)). Courts consider several factors when granting or denying leave to amend:

> Undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of the amendment are all factors which may affect the decision. Delay by itself is not sufficient reason to deny a motion to amend. Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted.

Wade v. Knoxville Util. Board, 259 F.3d 452, 458-59 (6th Cir. 2001) (quoting Head v. Jellico Hous. Auth., 870 F.2d 1117, 1123 (6th Cir. 1989)).

In Blackburn v. Oaktree Capital Mgmt, LLC, No. 3:05-1058, 2006 WL 2612742 (M.D. Tenn. Sept. 11, 2006), the Honorable Todd J. Campbell, Chief Judge, summarized the § 1447(e) inquiry as follows:

> "This statutory grant of discretion [in § 1447(e)] provides no standards to guide the federal courts in exercising their discretion . . . [.]
>
> If the non-diverse party sought to be joined is deemed indispensable, however, the court lacks discretion and must permit joinder and then remand the action.
>
> In most instances, courts will likely exercise their discretion to allow joinder and order remand. First, an order denying post-removal joinder is unlikely unless there has been undue delay on the part of the plaintiff, because the plaintiff has been forced into federal court by removal. Second, a joinder and remand conserves federal court resources and is immune from appeal.
>
> . . .
>
> The court should also consider the following factors in determining whether to permit joinder:
>
> (1) The plaintiff's motive for seeking joinder of a non-diverse defendant.
>
> (2) Whether a delay in seeking joinder is unexplained or unjustifiable.
>
> (3) Whether the statute of limitations would bar an action against the new defendant in state court if joinder is denied.
>
> (4) The strength of the claim.
>
> (5) Whether the plaintiff will be significantly injured if the amendment is disallowed.
>
> (6) Any other factor bearing on the equities."
>
> Moore's Federal Practice 3d § 107.41[2][d][i][A] and [B], p. 107-220 to 107-221).
>
> Additionally, [this Court] believes that the Court must consider the "liberal amendment" standard of Fed. R. Civ. P. 15(a).

Id. at *5-6.

Here, Plaintiff has not unduly or unjustifiably delayed in seeking to add EDA-T as a defendant. Prior to Plaintiff's receipt of limited discovery on June 1, 2011, Plaintiff was unaware of EDA-T's involvement as third-party operator of the gas station at issue, (Docket Entry No. 28 at 5). Plaintiff promptly filed her motion to amend on June 8, 2011. (Docket Entry No. 27). Plaintiff provided notice to Defendants that she would seek to add a defendant based on their limited discovery. (Docket Entry No. 28 at 6). This is Plaintiff's first motion to amend and this action is in its initial stages. Plaintiff's amendment would defeat complete diversity and return this action back to state court, but the Court concludes that Plaintiff's motion is in good faith and is not solely for the purpose of ousting this action from a federal forum.

Defendant contends that adding EDA-T as a defendant would be futile as untimely under Tennessee's personal injury limitations statute, Tenn. Code Ann. § 28-3-104(1). (Docket Entry No. 30 at 6). The decedent's injury and death occurred on March 10, 2010, and Plaintiff proposed to add EDA-T as a defendant on June 8, 2011. Plaintiff asserts her claim is timely because the parties' limited discovery on June 1, 2011 revealed EDA-T's existence and role in the action. (Docket Entry No. 28 at 7).

Plaintiff's amendment adding a new defendant cannot "relate back" to her original filing under Rule 15 because the Sixth Circuit holds that the addition of a new party creates a new cause of action. Asher v. Unarco Material Handling, Inc., 596 F.3d 313, 318 (6th Cir. 2010) (citation omitted). But, under Tennessee's discovery rule, a claim accrues 'when a plaintiff knows or in the exercise of reasonable care and diligence should know that an injury has been sustained as a result of wrongful or tortious conduct by the defendant." John Kohl & Co. P.C. v. Dearborn & Ewing, 977 S.W.2d 528, 532 (Tenn. 1998). Under the Tennessee Supreme Court's interpretation, the discovery rule tolls Plaintiff's limitations period until she has "'discovere[d],

or reasonably should have discovered, (1) the occasion, the manner and means by which a breach of duty occurred that produced his injury; and (2) the identity of the defendant who breached the duty.'" Schultz v. Davis, 495 F.3d 289, 292 (6th Cir. 2007) (emphasis in original) (quoting Foster v. Harris, 633 S.W.2d 304, 305 (Tenn. 1982)). The determination of whether a plaintiff was reasonably diligent in investigating a defendant's identity is generally a question for the trier of fact. Burk v. RHA/Sullivan, Inc., 220 S.W.3d 900, 901 (Tenn. Ct. App. 2006), appeal denied (Tenn. Jan. 29, 2007).

Thus, the issue is whether Plaintiff exercised due diligence in investigating the identity of EDA-T. Prior to filing the original complaint, Plaintiff's counsel researched the Davidson County Register of Deeds and discovered that the registered owner of the property at issue was OWC, Ltd. (Docket Entry No. 36 at 5-6). Plaintiff's counsel also obtained the Tennessee Department of Labor and Workforce Development, Occupational Safety and Hazard Administration's Report from the March 9, 2010 incident investigation and discovered that RaceTrac contracted Florida Rock to perform the tank-to-tank fuel transfer. Id. at 6.

Defendant RaceTrac argues that Plaintiff could have discovered EDA-T's operation of the RaceWay station in question by visiting the gas station and viewing the business license and the beer permit on the wall of the gas station.[3] (Docket Entry No. 30 at 8). The gas station's business license, although it contains no reference to EDA-T, lists Alemayehu N. Tetera and Emyou K. Kebede as the owners of the business, and the beer permit was issued to EDA-T. (Docket Entry No. 32, Exs.C and D). Plaintiff's investigation, however, must have been undertaken with only reasonable diligence, and Plaintiff has pled facts that demonstrate a

---

[3] Metropolitan Nashville Code § 7.08.070 requires the prominent display of Beer Permits. (Docket Entry No. 30 at 8).

7

reasonably diligent search. A reasonably diligent investigator may not have viewed Raceway's beer permit because there was not any reasonable guarantee that an alcohol license would reveal who owned and controlled the station's fuel. Also, as stated earlier, the gas station's business license did not reference EDA-T. (Docket Entry No. 32, Ex.D). Only RaceWay and two individuals were listed as the owners and operators on the business license displayed at the station. Id. Because Plaintiff's allegations suffice to establish reasonable diligence, her motion to amend would not be futile for lack of timeliness.

Defendants next argue that a claim against EDA-T would be futile because Plaintiff fails to state a claim under Fed. R. Civ. P. Rule 12(b)(6) against EDA-T and because Plaintiff's claim against EDA-T would be untimely. (Docket Entry No. 30, at 1). The appropriate standard to determine whether a proposed amendment is futile, is the standard for motions under Fed. R. Civ. P. 12(b)(6) motions. Midkiff v. Adams Cnty. Reg'l Water Dist., 409 F.3d 758, 767 (6th Cir. 2005) ("A motion for leave to amend may be denied for futility if the court concludes that the pleading as amended could not withstand a motion to dismiss."). On a 12(b)(6) motion, if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). In such an instance, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Id. Yet, a court may consider certain documents without converting the motion to dismiss into a summary judgment motion. "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." Bassett

v. Nat'l Collegiate Athletic Ass'n, 528 F.3d 426, 430 (6th Cir. 2008). The Court thus concludes that the parties' filed documents are appropriate for 12(b)(6) evaluation.

Plaintiff alleges that EDA-T negligently and recklessly failed to advise the decedent that the receiving tank was incapable of holding the required fuel; failed to place sufficient guidelines or procedures for tank-to-tank fuel transfer emergencies; failed to inform the decedent that his job could no longer be safely performed due to EDA-T's prior acceptance of a fuel delivery; and that EDA-T is strictly liable due to the ultrahazardous nature of a tank-to-tank fuel transfer. (Docket Entry No. 28, Attachment 1 at 9, ¶¶ 38-41). Plaintiff's complaint alleges that the decedent was directed to transfer the fuel from a specified "unleaded plus" tank into a specified "regular unleaded" tank. Id. at 4-5, ¶ 17. However, prior to the decedent's arrival, the RaceWay gas station allegedly received a fuel delivery that was placed in the "regular unleaded" tank into which Plaintiff was to transfer the fuel, leaving inadequate capacity to hold the transfer fuel. Id. at 5, ¶¶ 19-20. Plaintiff further alleges that he was not informed of the above prior delivery by anyone from either EDA-T or RaceTrac, despite his consultation with the RaceWay gas station's employees and agents before beginning the transfer. Id., ¶ 21.

Defendant RaceTrac contends that its contract with EDA-T specified that RaceTrac, not EDA-T, retained title and control of the fuel at the RaceWay station on March 9, 2010. (Docket Entry No. 30, at 6). RaceTrac asserts that, as a rule, EDA-T does not participate in tank-to-tank transfers and that EDA-T did not do so on March 9, 2010. (Docket Entry No. 32 at 2, ¶ 8). RaceTrac's lease agreement with EDA-T excludes from coverage "[a]ll Gasoline Dispensing Equipment, including . . . all underground storage tanks, pumps, dispensers and related electrical, piping, containment, remediation and monitoring systems." (Docket Entry No. 32, Ex.A at 14-

15, § 6.11(a)). These areas are not part of the "Premises" defined by the lease. Id. Moreover, the Gasoline Services Agreement between RaceTrac and EDA-T provides:

> Racetrac shall at all times have unobstructed access to and upon the Premises, including without limitation the Gasoline Dispensing Equipment and the area of the Premises designated for gasoline fueling and such additional areas as are necessary in Racetrace's sole discretion, for the delivery of gasoline and the installation, maintenance, repair, replacement and operation of the Gasoline Dispensing Equipment . . . [.]
>
> \* \* \*
>
> Title to all gasoline shall remain in Racetrac until sold by Contract Operator. All gasoline shall at all time be subject to the direction and control of Racetrac . . . [.]

(Docket Entry No. 32, Ex.B at 10, §§ 4.D, 4.F).

EDA-T, however, was not relieved of all fuel-related duties. The Gasoline Services Agreement provision cited in RaceTrac's brief, (Docket Entry No. 30, at 3), states in full:

> In addition to Contract Operator's obligations relating to repair and maintenance stated elsewhere herein, Contract Operator shall maintain the visible, external portions of the Gasoline Dispensing Equipment in a clean condition. Racetrac will provide all other maintenance and repair to the Gasoline Dispensing Equipment. Unless specifically instructed in writing by RaceTract, Contract Operator shall not repair the Gasoline Dispensing Equipment. However, Contract Operator shall conduct, at a minimum, a daily inspection of hoses, certified equipment, breakaways, valves, seals, vapor recovery systems, underground storage tanks and other equipment to ensure Stage II Recovery compliance and shall be solely liable for any non-compliance not reported in writing to Racetrac or otherwise corrected. Contract Operator shall immediately shut down the Gasoline Dispensing Equipment if continued operation would be dangerous or unsafe.

(Docket Entry No. 32, Ex.B at 10, § 4.C) (emphasis added). Moreover, EDA-T has access to and employee training in using the emergency cut-off switches located on site. Id. at 9, § 4.B. Despite retaining title and control of the fuel and its dispensing equipment, RaceTrac and EDA-T's Gasoline Services Agreement falls short of demonstrating that RaceTrac retained exclusive control of and access to the area.

10

Neither RaceTrac's brief nor the Gasoline Services Agreement shows who accepted a fuel delivery and directed it to be stored in the decedent's receiving tank before he arrived to work. "Draw[ing] all reasonable inferences in favor of [Plaintff]," In re Travel Agent Comm'n Antitrust Litig., 583 F.3d 896, 903 (6th Cir. 2009) (citation omitted), Plaintiff's complaint "'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Courie v. Alcoa Wheel & Forged Prods., 577 F.3d 625, 629 (6th Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S.----, 129 S.Ct. 1937, 1949 (2009)) (citation omitted). Accordingly, the Court concludes Plaintiff's motion to amend (Docket Entry No. 27) should be granted.

Because complete diversity will be defeated based upon the addition of EDA-T, and the action must remanded to state court, the Court concludes this action (Docket Entry No. 1, Attachment 1) should be remanded. Accordingly, Defendant Florida Rock's motion to dismiss (Docket Entry No. 9) should be denied as moot and Defendant RaceTrac's motion to dismiss (Docket Entry No. 11) should be denied.

An appropriate Order is filed herewith.

**ENTERED** this the ___29th___ day of July, 2011.

WILLIAM J. HAYNES, JR.
United States District Judge